IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:14-CV-601-FL

| | |
|---|---|
| GLORIA H. STEWART, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-20, DE-22] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Claimant Gloria Stewart ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her application for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be denied, Defendant's Motion for Judgment on the Pleadings be allowed, and the final decision of the Commissioner be affirmed.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on March 29, 2011, alleging disability beginning February 20, 2011. (R. 22, 163-66). The claim was denied initially and upon reconsideration. (R. 51-76). A hearing before the Administrative Law Judge ("ALJ") was held on May 20, 2013, at which Claimant was represented by counsel and a vocational

expert ("VE") appeared and testified. (R. 30-50). On July 1, 2013, the ALJ issued a decision denying Claimant's request for benefits. (R. 19-29). Claimant then requested a review of the ALJ's decision, and the Appeals Council denied Claimant's request for review on May 29, 2014. (R. 1-5). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

2

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

In this case, Claimant alleges that the ALJ erred by improperly evaluating the medical opinion of Claimant's treating physician Dr. Daka in violation of 20 C.F.R. § 404.1527 and failed to consider the longitudinal evidence in determining Claimant's residual functional capacity ("RFC"). Pl.'s Mem. [DE-21] at 10-15.

3

## IV. FACTUAL HISTORY

### A. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. The ALJ first found that Claimant last met the insured status requirements on December 31, 2012. (R. 24). At step one, the ALJ found that Claimant did not engage in substantial gainful employment from her alleged onset date through her date last insured. *Id.* Next, the ALJ determined that Claimant had the following severe impairments: coronary artery disease, hypertension, history of heart attack, history of bypass surgery, and history of stenting. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform sedentary work[1] with the following restrictions: never climb ladders, ropes, or scaffolds; avoid occupations with hazardous machinery/vibrations and concentrated exposure to fumes, dust, heat, moisture and pulmonary irritants; and be able to keep nitroglycerin at the worksite to take on an as needed basis, which would not affect production. (R. 25). In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 25-

---

[1] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a); S.S.R. 96-9p, 1996 WL 374185, at *3 (July 2, 1996). "Occasionally" means occurring from very little up to one-third of the time and generally totals no more than about 2 hours of an 8-hour workday. "Sitting" generally totals about 6 hours of an 8-hour workday. S.S.R. 96-9p, 1996 WL 374185, at *3. A full range of sedentary work includes all or substantially all of the approximately 200 unskilled sedentary occupations administratively noticed in 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 1. *Id.*

4

28). At step four, the ALJ concluded that Claimant was capable of performing her past relevant work as a bookkeeper. (R. 28).

## B.   Claimant's Testimony at the Administrative Hearing

Claimant was 51 years old and married with no children living at home at the time of the administrative hearing. (R. 42, 44). She completed the twelfth grade in school, and worked as a bookkeeper from approximately 2007 to 2010. *Id.* Claimant was required to lift very little in performance of her duties, which included working on the computer, sending reports to the home office, waiting on customers, and answering the telephone, but left her bookkeeping job because sitting all day was causing her pain and the job was stressful. (R. 42-44). Claimant next worked at a body shop unloading trucks and distributing parts to workers within the shop or at other stores, which required routinely lifting up to 30 or 40 pounds. (R. 43).

Claimant has chest pains when sitting during the day, particularly when she is upset about things such as not being able to work, but they sometimes occur for no reason. (R. 46). Claimant takes nitroglycerin for her chest pain two to three times a week or sometimes more. *Id.* Claimant saw her cardiologist Dr. Daka, who performed her cardiac catheterization, every three months over the approximately two years prior to the administrative hearing. (R. 40-41).

Approximately four days a week Claimant requires assistance with her personal care, such as bathing and dressing, due to pain in her legs and other areas. (R. 44-45, 48). When asked if Claimant is able to make meals for herself throughout the day, she responded that she usually makes "a sandwich or something." (R. 45). When asked if Claimant is able to do household chores, such as cleaning and laundry, Claimant responded that she could not do strenuous chores like mopping the floors. *Id.* She is able to drive, but her husband or daughter-in-law usually does the grocery

5

shopping. *Id.* Claimant spends the average day watching television, reading, or looking out the window, but cannot sit for long. (R. 47). She spends some time on her feet in the morning, but has pain in her legs and lower back by afternoon and can stand for about 20 to 30 minutes before having to rest. (R. 47-48). Claimant usually takes two daily naps of an hour and a half each. (R. 47). Claimant's attorney argued that Claimant does not have the stamina to maintain an eight-hour workday even at the sedentary level. (R. 48).

### C. Vocational Expert's Testimony at the Administrative Hearing

Coretta Harrelson testified as a VE at the administrative hearing. (R. 37-50). The VE classified Claimant's past work experience as follows: shipping/receiving clerk, Dictionary of Occupational Titles ("DOT") code 222.387-050, medium exertion level, and SVP of 5; bookkeeper, DOT code 210.382-014, sedentary exertion level, and SVP of 6; and parts manager, DOT code 185.167-038, light exertion level, and SVP of 7. (R. 37-39). The ALJ next asked the VE to assume a hypothetical individual of the same age, education and prior work experience as Claimant with the RFC to perform sedentary exertional work with the additional limitations to avoid hazardous machinery and vibrations, concentrated exposure to fumes, dust, heat, moisture, and pulmonary irritants, and never climb ropes, ladders, or scaffolds. (R. 39). The ALJ asked whether the hypothetical individual could perform any of Claimant's past work, and the VE responded that the individual could perform the job of bookkeeper. *Id.*

Claimant's attorney inquired, based on restrictions listed in Claimant's treating cardiologist's opinion, whether a hypothetical individual limited to sitting for only two hours in an entire workday and only able to stand for 15 minutes at a time would be able to perform Claimant's past work. (R. 39-40). The VE responded in the negative because an individual would be required to sustain six

6

hours in an eight-hour workday and two hours at a time of sitting at the sedentary level. (R. 39-40). Claimant's attorney then argued that a favorable decision under the Medical Vocational Guidelines was appropriate based on Claimant's inability to perform her past relevant work as a bookkeeper, sedentary RFC, and change in age category as of her 50th birthday. (R. 63, 40, 48).

## V. DISCUSSION

### A. The ALJ's Consideration of Dr. Daka's Opinion

Claimant contends that the ALJ erred by failing to give the opinion of Claimant's treating cardiologist Dr. Daka great weight. Pl.'s Mem. [DE-21] at 10-12. In response, Defendant argues that the ALJ correctly discounted Dr. Daka's opinion based on improvement in Claimant's condition and normal test results. Def.'s Mem. [DE-23] at 17-19.

The regulations require the ALJ to consider all evidence in the record when making a disability determination. 20 C.F.R. § 404.1520(a)(3). Regardless of the source, the ALJ must evaluate every medical opinion received. *Id.* § 404.1527(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. *Id.* § 404.1527(c)(1). More weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources, such as consultative examiners. *Id.* § 404.1527(c)(2). Though the opinion of a treating physician is generally entitled to "great weight," the ALJ is not required to give it "controlling weight." *Craig*, 76 F.3d at 590. In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Id.*; *see also Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (stating "[t]he ALJ may choose to give less weight to the testimony of a treating physician if there is

7

persuasive contrary evidence"); *Mastro*, 270 F.3d at 178 (explaining "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence") (citation omitted).

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all of the medical opinions in the record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). While an ALJ is under no obligation to accept any medical opinion, *see Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006) (unpublished), he must nevertheless explain the weight afforded such opinions. *See* S.S.R. 96-2p, 1996 WL 374188, at *5 (July 2, 1996); S.S.R. 96-6p, 1996 WL 374180, at *1 (July 2, 1996). An ALJ may not reject medical evidence for the wrong reason or no reason. *Wireman*, 2006 WL 2565245, at *8. "In most cases, the ALJ's failure to consider a physician's opinion (particularly a treating physician) or to discuss the weight given to that opinion will require remand." *Love-Moore v. Colvin*, No. 7:12-CV-104-D, 2013 WL 5350870, at *2 (E.D.N.C. Sept. 24, 2013) (unpublished) (citations omitted). However, "[i]n some cases, the failure of an ALJ to explicitly state the weight given to a medical opinion constitutes harmless error, so long as the weight given to the opinion is discernible from the decision and any grounds for discounting it are reasonably articulated." *Bryant v. Colvin*, No. 5:11-CV-648-D, 2013 WL 3455736, at *5 (E.D.N.C. July 9, 2013) (unpublished) (citations & quotations omitted).

8

Dr. Daka provided a form questionnaire dated October 24, 2012, indicating that Claimant was diagnosed with severe peripheral arterial disease. (R. 701). Dr. Daka opined that Claimant could stand at one time for 15 minutes, sit at one time for two hours, sit in a workday for two hours, and that he was unsure how many hours Claimant could work or stand in a workday. *Id.* Dr. Daka classified Claimant's pain as moderate. *Id.*

The ALJ specifically addressed Dr. Daka's opinion as follows:

> More but not great weight is given to the opinion of Matthew Daka, M.D. who opined that the claimant was able to perform less than sedentary work due to severe peripheral artery disease (Exhibit 15F). The record shows that in October 2012, the claimant admitted that her leg pain went away after sitting up for 15 to 20 minutes (Exhibit 16F/1). In addition, a lower extremity physiologic study performed on October 19, 2012 was normal (Exhibit 19F).

(R. 27). The ALJ similarly discounted the opinion of Claimant's primary care physician Dr. Susan Lewis based on Claimant's post-surgery improvement. *Id.* The ALJ gave great weight to the opinion of Dr. Alan Cohen who conducted a consultative examination of Claimant on July 12, 2011 and opined that Claimant's ability to sit, stand, and move about was not impaired, her ability to lift was moderately impaired, her ability to carry was mildly impaired, and her stamina was moderately impaired. *Id.* Finally, the ALJ gave significant weight to the opinions of the non-examining medical consultants who opined Claimant could perform less than a full range of light work, but provided for greater limitations in Claimant's RFC based on her testimony, to which the consultants were not privy. *Id.*

The ALJ also discussed Claimant's history of coronary artery disease: Claimant had a heart attack in 2009; a cardiac catheterization in February 2011 revealed three-vessel coronary artery disease for which Claimant had triple bypass surgery in March 2011; left carotid stenosis was

9

discovered during the preoperative workup for Claimant's bypass surgery, and Claimant underwent a left carotid encarterectomy in March 2011; and after Claimant reported bilateral lower extremity claudication, an MRA revealed aortic stenosis, for which Claimant underwent an aortobifemoral bypass in December 2011. (R. 25-26). The ALJ noted that upon discharge in January 2012 from the aortobifemoral bypass Claimant was ambulating independently and her blood pressure was stable. (R. 26). The ALJ further noted that in April 2012 Claimant's blood pressure remained normal and she reported feeling fantastic after her surgery. *Id.* The ALJ acknowledged Claimant's further complaints of lower-extremity claudication in October 2012, but also that she reported the pain subsided after sitting for 15 to 20 minutes. *Id.* Finally, the ALJ noted a carotid sonogram performed on October 11, 2012 showed some elevation of flow velocity in the right internal carotid artery, but that continued surveillance was recommended and that a lower extremity physiologic study performed on October 19, 2012 was normal and, thus, inconsistent with the Claimant's reports of debilitating pain. *Id.*

Claimant relies on *Radford v. Colvin*, where the Fourth Circuit criticized the ALJ's total rejection, without explanation, of the opinions of treating physicians in favor of the state medical examiners, "rais[ing] red flags because the state medical opinions are issued by non-examining physicians and are typically afforded less weight than those by examining and treating physicians." 734 F.3d 288, 295-96 (4th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)); *see also Fox v. Colvin*, No. 14-2237, 2015 WL 9204287, at *6 (4th Cir. Dec. 17, 2015) (unpublished) (characterizing as "cursory and conclusory" the ALJ's determination that the treating physician's opinion regarding the claimant's limitations was "not well[-]supported by the medical record," which did not allow for meaningful review of the ALJ's decision). The instant case is distinguishable from *Radford*, because

10

here the ALJ explained why he did not fully credit the opinion of Claimant's treating cardiologist: Claimant's severe peripheral artery disease had improved since her bypass surgery, Claimant's leg pain subsided after sitting for 15 to 20 minutes, and a lower extremity physiologic study performed just prior to the issuance of Dr. Daka's opinion was normal. (R. 27); *see Brown v. Colvin*, No. 4:12-CV-00247-FL, 2014 WL 1282255, at *7 (E.D.N.C. Mar. 27, 2014) (unpublished) (distinguishing *Radford* where the ALJ explained the reasons for giving great weight to the opinions of consultants over treating physicians). Furthermore, the ALJ here did not adopt without explanation the opinions of the state agency consultants, who opined Claimant could perform a limited range of light work, but rather further reduced Claimant's RFC to sedentary with limitations, because the consultants did not have the benefit of Claimant's testimony at the administrative hearing, which the ALJ found to be partially credible. (R. 27).

While Claimant correctly points out that she continued to exhibit some symptoms related to her heart condition, such as intermittent chest pain and shortness of breath (R. 46, 724-26), the ALJ determined that a sedentary RFC allowing for Claimant to take nitroglycerin when needed sufficiently accounted for Claimant's limitations. (R. 25-28). Claimant argues the ALJ's reasoning in this regard was faulty, noting that while the ALJ relied on the fact that Claimant's leg pain subsided after sitting for 15 to 20 minutes, he did not allow for rest breaks. Pl.'s Mem. [DE-21] at 12. However, a sedentary RFC requires mostly sitting and only occasional walking or standing. 20 C.F.R. § 404.1567(a); S.S.R. 96-9p, 1996 WL 374185, at *3. Claimant's complaints of "claudication and pain in her legs when *walking*," Pl.'s Mem. [DE-21] at 11 (emphasis added) (citing R. 723-24), is also addressed by a sedentary RFC. Finally, while Claimant points to an echocardiography and stress test in support of Dr. Daka's opinion (R. 727-30), the echocardiography,

11

signed by Dr. Daka, indicates only mild abnormalities (R. 727-28) and the stress test revealed some abnormalities but was negative for inducible ischemia (R. 729). The fact that Claimant can point to conflicting evidence in the record is not, in and of itself, indicative of error on the part of the ALJ. "When conflicting evidence is presented, it is the province of the ALJ, and not this court, to resolve those inconsistencies." *See Munson v. Astrue*, No. 5:08-CV-110-D(3), 2008 WL 5190490, at *2 (E.D.N.C. Dec. 8, 2008) (unpublished) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)). Although, there is some evidence in the record which would lend support to Dr. Daka's opinion, there is more than a "scintilla of evidence" supporting the ALJ's decision to discount this opinion. *See Dunn v. Colvin*, 607 F. App'x 264, 271 (4th Cir. June 1, 2015) (unpublished) (concluding the ALJ did not err in affording limited weight to a treating source opinion where "there is more than a 'scintilla of evidence' in the record supporting the ALJ's conclusion that [the physician's] opinion is incongruent with both his own treatment notes and some of the other medical evidence in the record."). Accordingly, the ALJ did not err in evaluating Dr. Daka's opinion.

**B.      The ALJ's Consideration of the Longitudinal Evidence in the RFC Determination**

Claimant contends that the ALJ improperly relied on periods of improvement after surgery and did not consider the longitudinal record that indicates Claimant continued to suffer from problems that prevent her from sustaining an eight-hour workday, five days a week. Pl.'s Mem. [DE-21] at 12-15. Claimant also argues that the ALJ failed to account for her chronic lower back pain, knee pain, fatigue, neuropathy, and anxiety and depression, which would require her to avoid stress and take frequent breaks. *Id.* The Commissioner contends that the Claimant provided contradictory testimony and that objective evidence undermines Claimant's subjective complaints. Def.'s Mem. [DE-23] at 10-16, 19-20.

12

An individual's RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. § 404.1545(a)(1); S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 404.1545(a)(3); S.S.R. 96-8p, 1996 WL 374184, at *5. Where a claimant has numerous impairments, including non-severe impairments, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.") (citations omitted). Furthermore, in assessing functional limitations, the ALJ must consider "all relevant evidence to obtain a longitudinal picture of [the claimant's] overall degree of functional limitation." 20 C.F.R. § 404.1520a(c)(1). The ALJ has sufficiently considered the combined effects of a claimant's impairments when each is separately discussed by the ALJ and the ALJ also discusses a claimant's complaints and activities. *Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) (citations omitted). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." S.S.R. 96-8p, 1996 WL 374184, at *7.

Here, the ALJ determined that Claimant had the RFC to perform

> sedentary work as defined in 20 CFR 404.1567(a) except never climb ladders, ropes, or scaffolds; avoid occupations with hazardous machinery/vibrations; and avoid concentrated exposure to f[]umes, dust, heat, moisture and pulmonary irritants. In addition, the claimant would need to keep nitro at the worksite to take on an as needed basis and would not affect production.

(R. 25). The ALJ considered several factors in determining Claimant's RFC, including Claimant's

13

medical history, the medical opinion evidence, and Claimant's testimony, which the ALJ found to be less than credible based on post-surgical improvement in her condition and objective medical testing that revealed normal to mild results, Claimant's failure to stop smoking as recommended by her doctors despite claims of continued shortness of breath, and Claimant's continued ability to drive. (R. 26-27). The ALJ determined that Claimant's reports of totally debilitating pain were not supported and restricted Claimant to a limited range of sedentary work to account for her continued symptoms and resulting limitations. (R. 25-28).

With respect to Claimant's continued symptoms related to her coronary artery disease, as discussed above, the ALJ fully addressed this impairment and determined Claimant could still do a reduced range of sedentary work despite some continued symptoms. *See supra* section V.A. pp. 11-12. Accordingly, the ALJ did not improperly rely on periods of improvement in formulating the RFC.

Claimant also contends the ALJ failed to account for other physical and mental limitations in the RFC unrelated to her coronary artery disease. As the ALJ acknowledged, all impairments including those that are not severe must be considered in determining the claimant's RFC. (R. 23); 20 C.F.R. §§ 404.1520(e); 404.1545; S.S.R. 96-8p. At the hearing, Claimant focused solely on her coronary artery disease as the cause of her inability to work. (R. 35-36). Although the questionnaire completed by Claimant's treating physician Dr. Lewis lists chronic lower back pain, peripheral neuropathy, and chronic anxiety as diagnoses, it more specifically addresses only Claimant's coronary artery disease. (R. 700). Nevertheless, the ALJ did consider and account for Claimant's peripheral neuropathy and lower back pain in the RFC.

The ALJ acknowledged that Claimant had a history of back pain and that Dr. Cohen, who

14

conducted a consultative examination on July 12, 2011, diagnosed Claimant with stable degenerative disease of the thoracolumbar spine. (R. 26, 495-97). The ALJ noted Dr. Cohen's examination findings that Claimant's gait and station were normal, no muscle tenderness was noted, she could sit, stand, squat, and ambulate, and her straight leg raise test was positive bilaterally when supine, but negative seated. *Id.* Dr. Cohen concluded that Claimant's ability to sit, handle objects, hear, and speak was not impaired, Claimant's ability to stand was mildly impaired, and Claimant's stamina and ability to move about, lift, and carry were moderately impaired. (R. 497). The ALJ determined these limitations were consistent with an RFC of sedentary work with additional postural and environmental restrictions. (R. 26). Claimant testified, in response to a question regarding whether she could still do chores, that she could not do strenuous chores such as mopping, which implies that she could no non-strenuous activities and supports the ALJ's RFC determination that Claimant was capable of a limited range of sedentary work. (R. 45). With respect to her peripheral neuropathy, the ALJ noted that Claimant indicated in October 2012 that her leg pain subsided after sitting for 15 to 20 minutes and that a follow-up lower extremity physiologic study performed on October 19, 2012 was normal. (R. 27, 702, 723). The treatment notes cited by Claimant related to her lower back and knee pain (R. 262, 265, 298, 698, 706, 725) do not undermine the ALJ's conclusion that she can perform a restricted range of sedentary work. Accordingly, the ALJ sufficiently considered and accounted for Claimant's chronic lower back pain and peripheral neuropathy in the RFC, which is supported by substantial evidence.

With respect to Claimant's anxiety and depression, the ALJ does not address these conditions or apply the special technique set forth in 20 C.F.R. § 404.1520a(b)-(c). "[W]here a Plaintiff has presented a colorable claim of a mental impairment, failure to follow the special technique is not

15

harmless error." *Bartz v. Colvin*, No. 5:13-CV-112-FL, 2014 WL 1614709, at *5 (E.D.N.C. Apr. 22, 2014) (unpublished) (citing *Cole v. Colvin*, No. 2:12-CV-44-FL, 2013 WL 3984019 (E.D.N.C. Aug. 1, 2013) (unpublished) (citing *Sparrow v. Astrue*, No. 4:09-CV-143-D, 2010 WL 2910013 (E.D.N.C. June 28, 2010) (unpublished), *report and recommendation adopted by* 2010 WL 2893607 (E.D.N.C. July 23, 2010))). Here, Claimant has failed to demonstrate a colorable claim of mental impairment.

The record reflects Claimant's first complaint of depression to Dr. Lewis on May 9, 2012, for which Claimant was prescribed Paxil. (R. 698-99). The treatment note from a follow-up visit on May 31, 2012 indicates Claimant could not take Paxil because it made her jittery, but that Xanax was helping her anxiety and her depression was better. (R. 696-97). There is no further mention in subsequent treatment notes of anxiety or depression, however, Dr. Lewis listed chronic anxiety as a diagnosis on the form questionnaire completed October 2, 2012. (R. 700). This scant evidence fails to establish a colorable claim of mental impairment or to justify remand, particularly where Claimant did not list any mental impairment as a basis for disability on her application for benefits or raise it at the hearing. (R. 35-36, 41-50, 198, 244-49, 254-56); *Meyer v. Colvin*, 754 F.3d 251, 257 (4th Cir. 2014) ("[A]n ALJ 'is not obliged to investigate a claim not presented at the time of the [benefits] application . . . and not offered at the hearing as a basis for disability.'") (quoting *Halverson v. Astrue*, 600 F.3d 922, 934 (8th Cir. 2010)). Although Claimant testified that her bookkeeping job was stressful (R. 44), she was subsequently treated with medication for anxiety and depressive symptoms and had no further complaints of such, there are no records of Claimant seeking treatment from a mental health provider, and Claimant has failed to demonstrate that her anxiety and depression resulted in any functional limitations. (R. 692-95, 713-16, 721-22 (Dr.

16

Lewis's treatment notes from July 25, 2012 to April 12, 2013 with no mention of problems with anxiety or depression)); *Guthrie v. Colvin*, No. 4:13-CV-57-FL, 2014 WL 2575318, at *14 (E.D.N.C. June 9, 2014) (unpublished) (finding no error in the ALJ's failure to consider claimant's depression where claimant did not list depression as impairment at either the initial or reconsideration level of her administrative proceedings, received no treatment from a psychiatrist, received only mild treatment with medication, and the record evidenced no functional limitations as a result of her depression). Accordingly, the ALJ's failure to consider Claimant's anxiety and depression was at most harmless error, and the ALJ did not err in failing to provide for further limitations in the RFC related to Claimant's anxiety.

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-20] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-22] be ALLOWED, and the final decision of the Commissioner be upheld.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **January 21, 2016** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed within **14 days** of the filing of the

objections.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

Submitted, this the 7th day of January 2016.

Robert B. Jones, Jr.
United States Magistrate Judge